FILED
2000 MAR 17 AM 9:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LORI BURCHARDT and<br>CRISTY BURCHARDT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION CV 99-J-0544-S |
| vs. | ) | |
| | ) | |
| DAVID MICHAEL MADDOX and<br>BETTY ARMSTRONG, | ) | |
| | ) | |
| Defendants. | | |

ENTERED
MAR 17 2000
asl

## MEMORANDUM OPINION

Currently before the Court are Defendants' motions for partial summary judgment (docs. 21 and 30). This Court has considered said motions, briefs in support of and in opposition to said motions. For the reasons set out below, the Court finds that no genuine issues of fact exist as to Plaintiffs' claims under the torts of outrage and invasion of privacy. Accordingly, said motions with respect to those claims are due to GRANTED. With respect to the claims made under the Fair Housing Act ("FHA"), the Court finds that genuine issues of fact do exists and accordingly DENIES said motions as to the claims under the FHA.

33

**Undisputed Facts**

On October 1, 1998 Plaintiff Lori Burchardt rented a single family dwelling at 48 Black Creek Lane, Tarrant, Alabama.[1] Defendant Maddox's Brief in Support of Motion for Summary Judgment ("Maddox Brief") at Exh. A; Defendant Armstrong's Brief in Support of Motion for Summary Judgment ("Armstrong Brief") at Exh. A; Plaintiff' Brief in Opposition to Armstrong's Brief ("Plaintiff's Brief–Armstrong") at Exh. 1, Att. A. The house is owned by Betty Armstrong. Plaintiff's Brief–Armstrong, Exh. 4 at 13. Ms. Armstrong's son, Mike Maddox lives and operates his business in the house next door. Armstrong Brief at 1; Plaintiffs' Brief–Armstrong. When Lori Burchardt moved in, her husband Binford Whitlock, a Bobby Pearson and Lori's son, Cortney ("Curt") Hayden, moved in as well. Plaintiff's Exh. 4 at 11.

In February 1999, Ms. Burchardt's daughter Cristy and Cristy's son, Tyesus, temporarily moved into the house on Black Creek Lane.[2] Maddox's Brief at 1; Armstrong Brief at 1; C. Burchardt Depo. at 13. Cristy Burchardt did not have permission from the landlord to move her or her family into the home that Cristy's

---

[1] All parties have submitted copies of the purported lease between Ms. Burchardt and Ms. Armstrong. Interestingly, the copy submitted by Defendants Armstrong and Maddox do not have Mr. Maddox's signature while the copy submitted by Plaintiffs, in both of their briefs, have been signed by Mr. Maddox. Additionally, Plaintiffs copies include an arrow from Mr.Maddox's signature to a phone number beside his alleged signature.

[2] Cristy Burchardt maintains she visited and stayed with her mother February 5, 1999 to February 11, 1999 and temporarily moved in on either February 27th or February 28th of 1999. Deposition of Cristy Burchardt ("C. Burchardt Depo.") at 13.

mother was renting. C. Burchardt Depo. at 18. During her stay, Mr. Maddox began to complain to Lori Burchardt of increased traffic to and from the house.[3] Cristy maintains that, in addition to the complaints, Mr. Maddox engaged in behavior intended to intimidate the Burchardts and their guests. *See* C. Burchardt Depo. at 30, 42, 53-54, 67, 129. Such tactics included staring at the children and their parents as they played in the yard and taking photographs of all of the visitors. *Id.* It is the Plaintiffs' belief that these complaints and intimidation tactics were borne out of racism on the part of Mr. Maddox. *See* C. Burchardt Depo. at 52.

On March 6, 1999, Mr. Maddox went to the home of Lori Burchardt to further complain about the volume of traffic. Maddox Brief at 2. Lori Burchardt told Mr. Maddox that she had hired an attorney. Plaintiff's Exh. 4 at 17. Lori Burchardt alleges that Mr. Maddox told her at this time that if she and her family did not vacate the house within 45 days, he would "burn the house down with you and your nigger loving family in it." Plaintiffs Exh. 4 at 18.

At the time Mr. Maddox allegedly made this statement, Cristy Burchardt was not at home. C. Burchardt Depo. at 31. However, she returned home shortly thereafter and was told by her mother what was said. *Id.* Cristy and Mr. Maddox exchanged words in the front yard, C. Burchardt Depo. at 24, and Lori Burchardt called her attorney.

---

[3] Cristy undoubtedly had several of her friends and their small children over to the home during this two week period. *See* Cristy Burchardt's Answer to Interrogatory #1.

3

Plaintiffs' Brief –Maddox, Exh. 4 at 37. The Burchardt's attorney recommended that Lori call the police and file a criminal complaint. Plaintiffs' Brief–Maddox at 5.

## Standard of Review

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proof on such motion. *See Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998)(*citing Celotex* 477 U.S. at 323).

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477

U.S. at 324. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Gonzalez,* 161 F.3d at 1294 (*citing Anderson*, 477 U.S. at 255).

## Legal Analysis

Plaintiffs sue under 42 U.S.C. § 3602, *et seq.* for violations of the Fair Housing Act ("FHA") §§ 1981 and 1982,[4] and the common law claims of outrage and wrongful intrusion.

Plaintiffs' Claims under the FHA:

In Plaintiffs' initial complaint, Plaintiffs averred that Defendant Maddox's alleged behavior stood in violation of the FHA. Specifically, Plaintiffs maintain Maddox's conduct constitutes a refusal to rent, by denying or otherwise making unavailable, Plaintiffs dwelling because of race, Complaint at ¶ 31, and discrimination in the terms, conditions, and privileges, of the rental of a dwelling and in the provision of services or facilities in connection therewith. Complaint at ¶ 36. Finally, Plaintiffs argue Maddox's threats and intimidation tactics constitute a violation of 42 U.S.C. § 3617. Complaint at ¶

---

[4] Defendant Maddox's motion for partial summary judgment, did not include the claims under 42 U.S.C. §§ 1981 and 1982. Accordingly, the claims made under these statutes against Maddox continue to trial. It is unclear from Defendant Armstrong's motion whether she moves for partial or complete summary judgment, claiming to do both in the same paragraph. Nonetheless, she fails to mention these claims in her brief in support of motion for summary judgment. Accordingly, the claims under 42 U.S.C. §§ 1981 and 1982 made against Armstrong continue to trial as well.

42.

Plaintiffs subsequently amended their complaint to include Ms. Armstrong as a defendant (doc. 7). In their amended complaint, Plaintiffs reallege the conduct of Mr. Maddox as violative of the FHA and amend these allegations to include their argument that Mr. Maddox was at all times pertinent to the complaint, acting as an agent for Ms. Armstrong, the owner of the home.[5]

*Cristy Burchardt's Standing to Sue:*

Defendants move for summary judgment as to Plaintiff Cristy Burchardt on the grounds she does not have standing to maintain a cause of action under the FHA. This Court disagreees.

The FHA provides a remedy for all "aggrieved persons," a person who claims to have been injured by a discriminatory housing practice; or believes that such person will be injured by a discriminatory housing practice that is about to occur. 28 U.S.C. § 3602. This definition has been interpreted to afford standing to any litigant who can comply with the minimum requirements set out in the Constitution. *See Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205 (1972). In considering Cristy

---

[5] A Second Amended Complaint was filed in this action was filed on June 30, 1999 (doc. 20). This complaint added allegations that Defendant Armstrong terminated the lease on the property located at Black Creek Lane in retaliation for Plaintiffs having filed suit against her and Maddox. This issue was not presented to the Court on motion for summary judgment. Plaintiff maintains Defendants' failure to move for summary judgment constitutes a concession of liability. This Court disagrees. Regardless, since the Court holds that the rental of the property at Black Creek Lane is exempt under § 3603(b), the Court finds the claim of retaliation moot.

Burchardt's claim in the light most favorable to her, this Court believes she has alleged a distinct and palpable injury sufficient to provide her standing to sue.

*Defendants' claim of exemption:*

Defendants, in their motions for summary judgment argue that they are exempt from the provisions of the FHA by virtue of § 3603(b)(1). Plaintiffs counter this argument by averring that Mr. Maddox's role in the rental property is that of an agent. Accordingly, the exemption under § 3603(b)(1) is inapplicable. Title 42, § 3603(b)(1) of the United States Code exempts:

> "any single-family house sold or rented by an owner: Provided, That such private individual owner does not own more than three such single-family houses at any one time: Provided further, . . . That such bona fide private individual owner does not own any interest in, nor is there owned or reserved on his behalf, under any express or voluntary agreement, title to or any right to all or a portion of the proceeds from the sale or rental of, more than three such single-family houses at any one time . . . Provided further, [] rented (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person and (B) without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of section 3604(c) of this title . . . "

from the Fair Housing Act. 42 U.S.C. § 3603(b). The burden of proving entitlement to an FHA exemption rested with Defendants. *Massaro v. Mainlands Section 1 & 2 Civic Ass'n,* 3 F.3d 1472, 1475 (11th Cir.1993).

7

The statutory language, "in any manner," is very broad, and exemptions to the FHA are to be construed narrowly. *Elliott v. City of Athens,* 960 F.2d 975, 979 (11th Cir.1992). Further, Department of Housing and Urban Development ("HUD") regulations define an agent under the FHA as "any person authorized to perform an action on behalf of another person regarding any matter related to the . . . rental of dwellings, including offers, solicitations or contracts and the administration of matters regarding such offers, solicitations or contracts or any residential real estate-related transactions." 24 C.F.R. § 100.20. Given the breadth of these definitions, the Court finds that the issues of whether Mr. Maddox was an agent of Ms. Armstrong and whether the existence of that agency operates to vitiate the exemption to the FHA provided by § 3603(b) are genuine issues of material fact to be decided by a jury.

Plaintiffs claims under the tort of outrage:

The tort of outrage was first recognized by the Alabama Supreme Court in *American Road Serv. Co. v. Inmon,* 394 So.2d 361 (Ala.1980). In *Inmon,* the Court set out the elements of the tort of outrage: the plaintiff must prove (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. *See Ex Parte Crawford,* 693 So.2d 458, 460; *Thomas v. BSE Industrial Contractors,* Inc., 624 So.2d 1041, 1043 (Ala.1993), *citing Inmon,* supra, at 365. With regard to the second element, extreme has been defined so as to refer to conduct so

outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon,* 394 So.2d at 365, citing Restatement (Second) of Torts § 46, Comment d (1965).

Given the stringent standards placed upon the tort of outrage, recovery is available only in the most egregious circumstances. As a consequence, the Alabama Supreme Court has held in a large majority of the outrage cases reviewed that no jury question was presented. *See Brassfield v. Jack McLendon Furniture, Inc.,* 953 F. Supp 1438 (M.D. Ala. 1996). In fact, in the many years since *Inmon* was decided, the only categories of cases presenting a jury question on the outrage claim are: 1) cases having to do with wrongful conduct in the context of family burials ... 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim ... 3) a case involving egregious sexual harassment. *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993).

In the case at bar, Plaintiffs' claim under the tort of outrage fails as a matter of law. Notwithstanding the fact that the circumstances giving rise to the complaint in the case at bar do not fall within the scope of extreme and outrageous conduct as interpreted by the Alabama Supreme Court,[6] Plaintiffs have not presented any evidence that they suffered

---

[6] The Court notes additionally the fact Plaintiff Cristy Burchardt's claim with respect to the incident on March 6, 1999 rests completely on hearsay and her remaining claims of staring and photographing clearly fall outside the scope of outrageous and extreme conduct going beyond all possible bounds of decency.

from severe emotional distress as a result of Defendants actions. *See Whaley v. Sony Magnetic Products, Inc. of America,* 894 F.Supp. 1517, 1525 (M.D. Ala. 1993) (*citing McIsaac v. WZEW-FM Corp.,* 495 So.2d 649 (Ala.1986) (plaintiff failed to present evidence of severe emotional distress and therefore could not survive summary judgment on her outrage claim)).

As Plaintiffs have failed to make a prima facie showing on the tort of outrage, Defendants' motion for summary judgment as to this count is due to be GRANTED.

<u>Plaintiffs Claim of Wrongful Intrusion:</u>

Finally, Defendants move for summary judgment on Plaintiffs' claim of invasion of privacy. Armstrong Brief at 16-19; Maddox Brief at 15-17. The Alabama Supreme Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Nipper v. Variety Wholesalers, Inc.,* 638 So.2d 778 (Ala.1994); *Phillips v. Smalley Maintenance Services, Inc.,* 435 So.2d 705 (Ala.1983). One may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or by an invasion of one's "emotional sanctum"; the law prohibits a wrongful intrusion into either of these areas of privacy. *Phillips, supra.*

In order to prove a wrongful intrusion, Plaintiffs must show (1) the thing into which there was an intrusion or prying was, or was entitled to be, private; (2) whether the intrusion or prying was offensive or objectionable. *See Hogin v. Cottingham,* 533 So.2d

10

525, 531 (Ala. 1988). The second prong of the analysis is measured by an objective standard, determining first the means used to gain the information and then inquiring into the defendants purpose for obtaining such information. *See Id.*

Plaintiffs claim in the case at bar fails for two reasons. First, Plaintiff has failed to establish that the acts complained of constitute a wrongful intrusion. Second, Plaintiffs have failed to present any evidence of outrage or cause mental suffering, shame, or humiliation.

Plaintiffs only offer evidence of Mr. Maddox staring at them and their guests and the photographing of these guests arriving to and departing from the Burchardt home[7] in support of their claim. *See* C. Burchardt Depo. at 67, 129, 139; Lori Burchardt's Answer to Interrogatory #1. . The Court finds, however, that even taking these allegations as true, the claim fails as a matter of law. Plaintiffs have no reasonable expectation of privacy in the road leading to their home or their front yard. *See Johnson v. Corporate Special Services,* 602 So.2d 385, 388 (Ala. 1992). Therefore, they have failed to present evidence in support of the first prong of the analysis of a wrongful intrusion claim. Because Plaintiffs can not show they were entitled to privacy in their front yard, they can not prove that this privacy was intruded upon in an objectively offensive or objectionable

---

[7]Some of these incidents occurred during the two week period between the time Cristy moved in and the time this lawsuit was filed. *See* C. Burchardt Depo. at 38. Still others occurred after the time this lawsuit was filed. Plaintiffs in their testimony and answers to discovery, do not distinguish between the incidents giving rise to this lawsuit and those occurring after the time the lawsuit commenced

11

manner.

Finally, Plaintiffs have presented no evidence of outrage, mental suffering, shame, or humiliation. Neither Cristy nor Lori required medical attention as a result of Mr. Maddox's acts. C. Burchardt Depo. at 56-57; Lori Burchardt Answer to Interrogatory #22.

## Conclusion

In consideration of all of the foregoing, the court is of the opinion that Defendants' motions are due to be granted in part and denied in part.

It is therefore **ORDERED** by the Court that Defendants' motions for summary judgment;

with respect to the claims made under the Fair Housing Act ("FHA") are **DENIED**;

with respect to the claims made under the torts of invasion of privacy and outrage, are **GRANTED**.

**DONE** and **ORDERED** this the ___16___ day of March, 2000.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE